UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE NO: 24-cr-171-BAH |
| | : | |
| | : | |
| JAMES STYNER | : | |
| Defendant. | : | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States respectfully files this memorandum to aid the Court in sentencing the defendant, James Styner, who is before this Court after admitting to wide-ranging conduct involving the online exploitation of numerous girls throughout the United States. The United States asks the Court to sentence Styner to 240 months of incarceration, or twenty years, followed by a lifetime of supervised release. Such a sentence is a downward variance from the defendant's Sentencing Guidelines range which reasonably balances the factors outlined in 18 U.S.C. § 3553(a); it reflects the seriousness of his offenses while also acknowledging that Styner is a young man whose own history of neurodevelopmental disorders are closely intertwined with his conduct in this case.

**I.    Background**

Beginning at the age of 17 and continuing until the time of his arrest at the age of 19, James Styner engaged in a pervasive online campaign to manipulate and exploit vulnerable girls for his own sexual satisfaction. In just over a year after becoming an adult, Styner participated in approximately 45 chat conversations over Discord in which he demanded sexually explicit material from the individuals on the other end, many of them being underage girls. He was aggressive, cruel, and demeaning to many of his victims, degrading them with both his words and

1

actions and treating them with a level of contempt shocking for someone so young. His conduct encompassed in-person sexual relationships with at least two minor girls, as well as threats of harm. He also frequently sent explicit images of his own genitalia to his minor victims and, on several occasions, distributed self-produced child pornography to others, including minors.

Minor Victim 1

Styner came to the attention of law enforcement in September of 2023, after a 13-year-old girl living in Washington D.C. disclosed to her therapist, a mandated reporter, that someone she had met online had "groomed" her. The girl, Minor Victim 1, explained that "groomed" meant "when you get taken advantage of by someone older than you or just someone in general when they take advantage of you and manipulate you into doing what they want." She also disclosed that she met the person on the platform Discord and that he communicated with her under the username Neo1984#0. The user of Neo1984#0 was later determined to be the defendant, James Styner, who was living in Garden Grove, California during the offense. Styner, who was born on October 2, 2004, was 18 years old at the time, having turned 18 on October 2, 2022.

During his communications with MV1, Styner demanded that she produce and send him child sexual abuse material (CSAM) on multiple occasions. He did this despite knowing that she was a minor. In addition, he shipped two sex toys, "dildos," to MV1's Washington D.C. home on two different dates and detailed the specific things that he wanted to see her do with them. MV1's mother intercepted one of the sex toys sent to the home.

Styner communicated with MV1 over Discord for over a month and the following excerpts are examples of his tone and demands for explicit images while interacting with someone who he knew was a minor:

2

**September 6, 2023:**

>STYNER: can u record some nudes for me or maybe we can have e sex later
>
>MV1: Didn't i tell you I had to stop that and that it was illegal!!!
>
>STYNER: its not if its on call silly :p
>
>STYNER: and even if its vids u can unsend them :p
>
>STYNER: i didnt buy you the dildo for u not to send me vids of u using it sweetiepie

**September 7, 2023 4:22pm**

>STYNER: Look
>
>STYNER: Your dildo was delivered
>
>STYNER: It's sending
>
>STYNER: *[Sends a screenshot consistent with an Amazon order. The item ordered was titled "T-explorer Realistic Dildo" and was marked as "Delivered today" to "Princess, [MV1's DC address]".]*

**September 7, 2023 4:50pm**

>STYNER: Send a video to you playing with your clit
>
>STYNER: Like spread that shit for me
>
>STYNER: Finger it
>
>MV1: Nuh uh
>
>*[STYNER then threatened to "cancel it" (referring to something he bought for MV1). MV1 tells him to "do it" "I can buy it myself I'm ricj"]*
>
>STYNER: Was gonna give you $30

**September 7, 2023 6:04pm**

>STYNER: If u do it on call with me I'll order you the next size up ;)

3

MV1: NOOO I'M TOO SCARED

MV1: *[Sends a video depicting MV1 masturbating using a clear sex toy that is consistent with the appearance of the dildo STYNER sent in the above listed photo. MV1 is seen inserting the toy into her exposed vagina and pulling it out repeatedly.]*

STYNER: Lemme see you ride it

STYNER: Imma order you a large if I see you ride it k?

MV1: Ok!

MV1: *[Sends a video depicting MV1 standing the sex toy up before lowering her exposed vagina onto the toy and raising herself up again before repeating the actions.]*

**September 8, 2023 6:34pm**

STYNER: Ordered you the next size up dildo :3

MV1: Rreally?!? You don't have to!! And also my parents might find out!

STYNER: No it's fine

STYNER: I wanna see you ride a bigger one

MV1: :DD

STYNER: *[Sends a screenshot consistent with an Amazon order indicating that an order was placed. The item ordered was shipped to "Princess [MV1's DC address]" and appeared to be the same item as the prior dildo ordered.]*

**September 9, 2023 3:18pm**

STYNER: Dildo should be coming Monday

MV1: Woohoo!! I'll use it for you

STYNER: Yeah you'll record anything I tell you to record with it

STYNER: Anyways Where are you rn I'm horny and I want you to send nudes

4

MV1: My grandma's house

STYNER: Go touch urself in ur room Finger ur pussy Or use a brush :3

MV1: I cant

The report by MV1 resulted in a wide-ranging investigation into Styner's conduct on the platform Discord as it related to numerous other potential victims. Using the same username, Neo1984#0, Styner communicated with and exploited numerous other minor girls, ranging in age from 12 to 16, all from his home in Garden Grove, California. Law enforcement identified and interviewed some, but not all, of those girls. As part of the plea agreement, Styner admitted to conduct involving a total of 12 minor victims, all of whom were identified. He also admitted that he had engaged in similar conduct with other unidentified individuals who claimed online that they were minors, although their identities and ages could not be confirmed. Styner's conduct with respect to verified minors included:

Minor Victim 2 (Discord User "dollybased#0"):

Between approximately August 30, 2022, and May 7, 2023, Styner communicated with Discord user "dollybased#0," Minor Victim 2 ("MV2"), who self-identified as a 13-year-old-girl during their communications. He began communicating with MV2 when he was 17 years old and continued after he became an adult. MV2, who was born in 2010, was between 12-13 years old at the time of the communications and resided with her family in Arizona at the time of the offense. Styner solicited, but did not receive, sexually explicit material from MV2. In addition, Styner sent MV2 three self-taken pictures of his erect penis and one self-taken video of his erect penis.

Minor Victim 3 (Discord User thath0edani#0):

Between approximately June 14, 2023, and July 30, 2023, Styner communicated with Discord user "thath0edani#0," Minor Victim 3 ("MV3"), who self-identified as a 13-year-old-girl

in her communications with Styner. MV3, who was born in 2010, was between 12-13 years old at the time and lived in California with her family. During their communications Styner repeatedly asked for photos and videos depicting MV3 engaged in sexually explicit conduct. For example, on June 25, 2023, the following exchange occurred:

STYNER: Send a pussy pic rn...To show me ur listening.

MV3: *[Responded by sending a close-up image showing herself touching her exposed vagina with her fingers.]*

STYNER: Do what I say you little slut...Record the video...I want to hear you moan daddy...Fuck yourself.

MV3: *[Sent an image showing herself nude, laying in an empty bathtub, with her legs elevated exposing her vagina and breasts].*

MV3: Oh I'm still a virgin btw.

STYNER: Styner messaged "*Guess I'll have to take it*".

MV3: *[Sent an 11-second video showing herself nude, sitting on the floor with her legs spread and inserting her fingers into her vagina.]*

Styner additionally sent MV3 a video of himself receiving fellatio from Discord user "mybloodyvalentin3#0," who is referred to as MV12, in the Statement of Offense. He also sent MV3 videos depicting himself engaged in masturbation.

**Minor Victim 4 (Discord Deleted User c79f7c8c#3810):**

Between approximately September 4, 2023, and September 6, 2023, Styner communicated with deleted Discord user "c79f7c8c#3810," Minor Victim 4 ("MV4"), who self-identified as a 13-year-old girl. MV4 was born in 2009 and resides in Florida. During their communications STYNER solicited and received self-produced sexually explicit material from MV4.

**Minor Victim 5 (Discord User lolaluvly#0):**

Between September 4-8, 2023, Styner communicated with Discord user lolaluvly#0, hereinafter Minor Victim 5 ("MV5"), who self-identified to Styner as a 13-year-old girl. MV5 is a minor female who resides in South Carolina. During their communications, Styner solicited and received self-produced sexually explicit material from MV5.

**Minor Victim 6 (Discord User skibblerb#0):**

Between July 7, 2022, and July 11, 2023, Styner communicated with Discord user skibblerb#0, Minor Victim 6 ("MV6"). He began communicating with MV6 when he was 17 years old and continued after he became an adult. MV6, who was approximately 15-16 years old, was born in 2007 and resided in California with her family at the time. During their communications, STYNER solicited and received self-produced sexually explicit material from MV6.

**Minor Victim 7 (Discord User Puppykiki<3#8301):**

Between approximately July 8, 2023, and August 3, 2023, Styner communicated with Discord user Puppykiki<3#8301, Minor Victim 7 ("MV7"), who self-identified as a 14-year-old girl. MV7, who was born in 2008, lived in Georgia with her family at the time. During their communications, Styner repeatedly directed MV7 to send him sexually explicit images of herself. For example, the following exchange occurred on July 8, 2023:

STYNER: what do you look like

MV7: as in my face or body?

STYNER: you can send both if you want...selfie and a full body pic

MV7: *[Sent two images showing her laying on a bed with her vagina exposed and an image showing her on a bed, from behind, with her vagina and anus exposed.]*

7

STYNER:  send send send...also ur not allowed to send...# anyone...these videos...only me >:)...cuz im ur bf now...got that you little slut?"

MV7:  *[Sent a 28-second video showing herself sucking on a prosthetic sexual device.]*

STYNER: Styner messaged "do u have one where ur...fucking ur pussy with that dildo...also such a shame...ill buy you a better one...a tentacle one that cums >:)".

MV7:  yea yea lemme go search for em *[Sent 18-second and 17-second videos showing herself inserting a prosthetic sexual device into her vagina].*

**Minor Victim 8 (Discord User *lvurliy#0*):**

Between approximately August 6-29, 2023, Styner communicated with Discord user lvurliy#0, Minor Victim 8 ("MV8").  MV8, who was born in 2010, was approximately 13 years old at the time of the communications and lived in North Carolina with her family.  During their communications Styner repeatedly asked for photos and videos depicting MV8 engaged in sexually explicit conduct.  For example, on August 6, 2023, the following exchange occurred:

STYNER: how old r u pup

MV8: 14… sadly

STYNER:  I'm 18 ^_^ and daddy will take care of u
…
STYNER:  Do you have nudes of urself...or videos of you fucking urself...send them to daddy now

MV8:  *[Sent a 4-second video showing herself touching her bare breasts with her hands, a 6-second video showing herself pulling her bra down exposing her bare breasts, and an 11-second video showing herself pulling her shirt up exposing her bare breasts.]*

STYNER:  Do you have videos of you fingering that pussy...Just slide ur panties over insert a finger and record it that's all

MV8:  but I'm scareddd I've never done anything like that before

STYNER:  Styner messaged "Don't be scared...daddy will reward you for your bravery

STYNER:  show daddy what you recorded...Whore

> MV8:   *[Sent a 12-second video showing herself pulling her shirt down exposing her bare breasts, a 16-second video showing herself pulling her shirt down exposing her bare breasts, and an 8-second video showing herself pulling her shirt down exposing her bare breasts and then showing her vagina]*
>
> STYNER:   "See your pussy is fine:))...Ok so for the mega suprise record a video of you sucking ur fingers then touching ur pussy".
>
> MV8:   *[Sent an 18-second video showing herself inserting her fingers into her mouth then rubbing her exposed vagina, a 20-second video showing herself inserting her fingers in her mouth then rubbing her exposed vagina, and a 26-second video showing herself inserting her fingers in her mouth then rubbing her exposed vagina.]*

In addition, Styner sent MV8 two images of his erect penis.

<u>Minor Victim 9 (Discord User pokii6141#0 and iloveeneo#0):</u>

Between June 29, 2023, and October 11, 2023, Styner communicated with Discord user pokii6141#0 and iloveeneo#0, Minor Victim 9 ("MV9").  The user of these two accounts was later confirmed to be a minor female, born in 2008, who lived in California near to Styner's residence in Garden Grove, California.  During the communications, the defendant solicited and received self-produced sexually explicit material from MV9.  Styner also engaged in a sexual relationship with MV9.  Styner was approximately 18-19 years old at the time, while MV9 was approximately 15 years old.

On September 30, 2023, Styner was arrested by the West Covina Police Department based upon allegations regarding his conduct toward MV9.  According to the police report, MV9 told Styner that she was pregnant with his child, and he told her to get an abortion.  When she refused, he threated to stab her.  MV9 contacted the police and Styner was arrested near to her home with a multi-tool containing a knife on his person.  The allegations related to MV9 are set forth in more detail in Paragraph 97 of the Presentence Report.  Styner was released following his arrest in the West Covina case and was on release at the time he was arrested in the instant case.  There is currently a non-extraditable arrest warrant pending based upon Styner's West Covina arrest.

9

**Minor Victim 10 (Discord User ash._.tray#0):**

Between April 24, 2022 and October 10, 2023, Styner communicated with Discord user ash._.tray#0, Minor Victim 10 ("MV10"). He began communicating with MV10 when he was 17 years old and continued after he became an adult. MV10, who lives in California, was approximately 15-16 years old at the time of her communications with Styner. Styner solicited sexually explicit images from MV10, but did not receive any such images from her. He also distributed child pornography to her by sending a video of himself receiving fellatio from Discord user "mybloodyvalentin3#0," MV12.

Minor Victim 11 (Discord User s3r4phiic#0):

Between September 6, 2022, and September 19, 2023, Styner communicated with Discord user s3r4phiic#0, Minor Victim 11 ("MV11") who self-identified as a 15-year-old girl. STYNER began communicating with MV11 when he was 17 years old and continued after he became an adult. During their communications, STYNER solicited and received self-produced sexually explicit material. STYNER also sent MV11 two self-taken masturbation and ejaculation videos.

Minor Victim 12 (Discord User _mybloodyvalentin3#0):

Between October 18, 2022, and October 10, 2023, Styner communicated with Discord user mybloodyvalentin3#0, Minor Victim 12 ("MV12"). MV12, who was born in 2007, was approximately 15-16 years old at the time of their communications and lived in California near Styner's Garden Grove, residence. During their communications, Styner repeatedly solicited and received self-produced sexually explicit material from MV12. For example, on August 24, 2023, the following exchange occurred:

> STYNER: I wanna see all your fluids leak out of that slut hole of yours...Bitch...Youve been pissing me off so much I'm gonna fucking spit on you...Worthless trash".
>
> MV12: i csnt imma get caught

>STYNER:  Okay...Just do what you're doing then whore
>
>MV12: *[Sent an 8-second video showing herself inserting her fingers into her vagina.]*
>
>STYNER:  How bad you want me...Say it...I want to hear you say it you slut
>
>MV12: *[Sent a 6-second video showing herself touching her exposed vagina with her fingers.]*
>
>STYNER:  Styner messaged "Fuck yourself...Stick something that's long deep inside there you bitch...You really call that fucking yourself...You're pathetic...I can fingerbang you faster than that...Go faster...Bitch...Get to recording
>
>MV12: *[Sent a 13-second video showing herself inserting her fingers into her vagina.]*
>
>STYNER:  Go faster...You're pathetic
>
>MV12: *[Sent a 10-second video showing herself inserting her fingers into her vagina]*

Styner also engaged in a sexual relationship with MV12 and created multiple images depicting the two of them participating in sexual activity, thereby producing child pornography. He later distributed some of those child pornography images of him and MV12 to other individuals. This included a 1 minute and 27-second video depicting MV12 and Styner engaging in vaginal intercourse, which he later distributed to an adult female Discord user. He also distributed a 52-second video of MV12 performing fellatio on Styner to MV3 and MV10.

Plea Agreement

On March 28, 2025, Styner entered a global plea offer with the United States encompassing offenses with venue in both Washington D.C. and the Central District of California. As part of the plea, he admitted to the wide-ranging conduct described above, and entered a guilty plea to a five-count Information. Specifically, Styner pled guilty to: one count of Coercion and Enticement of a Minor, in violation of 18 U.S.C. 2422(b), with respect to his conduct toward MV1; one count of Distribution of Child Pornography, in violation of 18 U.S.C. 2252(a)(2), with respect to his

11

distribution of images depicting MV12; and three counts of Receipt of Child Pornography, in violation of 18 U.S.C. 2252(a)(2), with respect to his conduct toward MV3, MV7, and MV8. As part of the plea, the United States agreed to cap allocation at twenty years of incarceration, followed by a period of supervised release. Sentencing is scheduled for June 27, 2025.

Styner's conduct necessitates a lengthy sentence and term of supervised release. His conduct was far-reaching, long-lasting, and ensnared numerous girls and young teens. He cruelly demeaned and exploited his victims, calling at least one girl "worthless trash" as he demanded that she "fuck herself" on video to gratify his insatiable need for sexually explicit material. Nevertheless, he is a young man who began engaging in this reprehensible behavior while he was still a minor. Undoubtedly Styner's immaturity and his neurodevelopmental struggles are factors that contributed to the offenses in this case, however, those issues have already been factored into the downward variance that the United States is seeking. The United States respectfully requests a sentence of 240 months of incarceration, a downward variance from the Sentencing Guidelines range, to be followed by a lifetime of supervised release. Such a sentence reasonably reflects the factors outlined in 18 U.S.C. § 3553(a) by recognizing the seriousness of the defendant's crimes and the future danger that he presents, while also acknowledging the mitigating circumstances presented by the defendant's neurodevelopmental struggles.

**II.   A Sentence of 240 Months Reasonably Reflects the § 3553(a) Factors**

In determining a reasonable sentence, the Court must consider the factors listed in 18 U.S.C. § 3553(a).[1] These factors include:

---

[1] "Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005), the Guidelines serve only an advisory function. *Id.* at 245, 125 S. Ct. 738. Nevertheless, even in a post-*Booker* world in which the Guidelines are not binding, the sentencing court 'must calculate and consider the applicable Guidelines range" as its starting point.

  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
  (2) the need for the sentence imposed –
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and
  (3) the kinds of sentences available;
  (4) the applicable sentencing guidelines range for the offense;
  (5) pertinent policy statements issued by the U.S. Sentencing Commission;
  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a); *see also United States v. Pyles*, No. CR 14-00006 (RJL), 2020 WL 376787, at *2 (D.D.C. Jan. 23, 2020); *United States v. Mitchell*, No. CR 05-00110 (EGS), 2019 WL 2647571, at *7 (D.D.C. June 27, 2019). A district court, however, "need not consider every § 3553(a) factor in every case." *In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008); *see also United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017).

  Here, the United States submits that a sentence of 240 months, which is a below-guidelines downward variance from the defendant's Sentencing Guidelines' range, reasonably accounts for the factors established in § 3553.

  **A. The Nature and Circumstances of the Offense**

  The nature and circumstances of Styner's offenses underscore the need for a substantial sentence in this case. The number of victims, his cruel and demeaning interactions with those victims, the fact that he engaged in multiple in-person sexual relationships with minors, as well as the length of time that he engaged in exploitive conduct are all aggravating factors that should be considered in determining the appropriate sentence.

With respect to the number of victims, the statement of offense details Styner's interactions on Discord with twelve minor girls over the course of more than one year, all of whom law enforcement positively identified and confirmed to be minors. In addition, Styner engaged in similarly exploitive chats with numerous other individuals on Discord. However, many of those other individuals could not be identified by law enforcement or verified to be minors. The sheer number of victims exploited by Styner is startling, particularly considering that he was only 19 years old at the time of his arrest.

Styner's cruelty toward and attempt to control his victims are additional factors that the Court should consider in fashioning a sentence. The girls ensnared by Styner ranged in age from 12 to 16, an age range ordinarily defined by immaturity and susceptibility. Styner exploited this immaturity and susceptibility for his own ends and did so with a brazen contempt for his victims. His comments to MV12 – calling her "worthless trash" and threatening to "fucking spit on" her – highlight the way in which he demeaned the girls he ensnared. He also attempted to assert control over his victims, as exemplified by his efforts to forbid MV7 from sending explicit images to anyone else, saying "[S]end send send...also ur not allowed to send...# anyone...these videos...only me >:)...cuz im ur bf now...got that you little slut?" Not only did he direct his victims to create original explicit content for him, but he did so in a manner that devalued the humanity and autonomy of these young girls. The unusual level of cruelty stands out as a characteristic of Styner's offense here.

Further, Styner's conduct was not limited to the online world but expanded to in-person sexual relationships with two minor girls, both of whom he exploited in different ways. With respect to MV9, Styner was arrested in September of 2023 after threating to stab MV9, who was 15 at the time, after she refused to get an abortion. At the time of his arrest, Styner was armed with

a multi-tool that could be used to make good on his threat to MV9. With respect to MV12, who was approximately 15-16 years old, Styner filmed the two of them engaging in sexual activity and later distributed some of those videos to other people. Styner's conduct spilled over from the online world into the real world, and involved both sexual contact with minors and threats to commit acts of violence, demonstrating the danger that he poses.

Finally, Styner's offense conduct spanned more than a year – from the date he turned 18 to the date of arrest – a substantial period of time. This was not a short-lived lapse in judgement, but a long-term pattern of behavior toward vulnerable girls.

The aggravating characteristics of Styner's offenses necessitate a substantial sentence in this case. The United States submits that 240 months, followed by a lifetime of supervised release, is an appropriate sentence considering the number of victims, Styner's cruel and demeaning conduct toward his victims, his in-person sexual relationships with minors, as well as the long-term nature of the conduct.

**B. History and Characteristics of the Defendant**

The egregious nature of Styner's conduct must be considered side by side with his own youth and the neurodevelopmental challenges he has faced throughout his life. These factors, while not excusing Styner's behavior, support the United States' request for a downward variance. Styner began engaging in sexually explicit chats with younger girls on Discord while he was still a minor. This is reflected in the Statement of Offense, which acknowledges that Styner began corresponding with MV2, MV6, MV10, and MV11, when he was 17 years old. In those instances, his conduct did not amount to a federal offense but instead involved the offensive treatment of girls in a similarly aged peer group.

15

However, even after his 18th birthday, Styner continued to engage with girls who he knew where underage and did so for more than a year after becoming an adult. He even dismissed concerns about the illegality of his actions, ignoring warnings that should have prompted him to reconsider his conduct. For example, On September 6, 2023, Styner and MV1 had the following exchange:

> STYNER: can u record some nudes for me or maybe we can have e sex later
>
> MV1: Didn't i tell you I had to stop that and that it was illegal!!!
>
> STYNER: its not if its on call silly :p
>
> STYNER: and even if its vids u can unsend them :p
>
> STYNER: i didnt buy you the dildo for u not to send me vids of u using it sweetiepie

Rather than adjust his conduct once he became an adult, he continued his pursuit of sexually explicit images from minor girls, even when reminded by a minor victim that such conduct was now illegal.

Styner's history of neurodevelopmental struggles – including his recently-diagnosed Autism Spectrum Disorder (ASD) and previously-diagnosed Attention Deficit Hyperactivity Disorder (ADHD) – is undoubtedly intertwined with his conduct in this case. According to Sarah Boyd, Licensed Clinical Psychologist,

> Mr. Styner's conduct appears to be the product of a combination of factors that include marked developmental immaturity, some distorted and incorrect beliefs about sexuality and women/girls, executive functioning deficits including emotional dysregulation, autism spectrum features contributing to reactive mood and rigidity in his thinking and behavior, and a very poor fund of knowledge about healthy intimate interpersonal interaction.

Sara Boyd, *Styner Clinical Evaluation*, September 30, 2024, at 9 (hereinafter "Boyd Evaluation"). Boyd emphasized that Styner's neurodevelopmental age and maturity level are younger than his

biological age. Based upon the observer rating forms completed by Styner's parents for the Adaptive Behavior Assessment Scales, Third Edition (ABAS-3), Boyd noted that,

> The age equivalency scores produced by this ABAS-3 administration showed Mr. Styner's functioning as varying between the level of a younger child in some areas (e.g., social functioning, self-direction) and a younger teenager in other areas (e.g. health and safety, community use).

Boyd Evaluation, at 8. This suggests a person who is developmentally a child, despite his biological age as an adult. Boyd additionally explained that:

> His [Styner's] poor judgment is likely to improve with age but he will need closer supervision while he remains within the time frame for late adolescent development (for Mr. Styner, I expect he will not likely complete his adolescent development from a developmental psychology perspective until he is at least 25 years old.)

Boyd Evaluation, at 9.

Styner's neurodevelopmental challenges support the United States's request for a downward variance in this case. Additionally, those same neurodevelopmental challenges call for appropriate treatment for Styner to mitigate the possibility of reoffending once he returns to the community. Boyd specifically noted the importance of continuing treatment once Styner is released into the community because individuals "who have ASD features/are on the autism spectrum, […] tend to struggle to generalize skills learned in one environment to a different setting." Boyd Evaluation, at 10. Long-term continued treatment will assist in mitigating the risk that Styner presents of reoffending.

### C. Just Punishment and Adequate Deterrence

Just punishment for the crime, as reflected by community standards, is also an important factor in fashioning a sentence. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity

of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.* Further, Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *See United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017) (the sentence would deter Fry and "others who may be inclined in doing similar kinds of things.").

The sexual exploitation of minors is a serious offense that can have detrimental effects on victims both in the long and short term. Styner's year-long exploitation of multiple minor girls involves serious crimes, and his sentence should reflect that reality. He manipulated numerous young girls into producing sexually explicit content for him, engaged in at least two sexual relationships with minor girls, and distributed original child pornography content that he created. The Court should impose a substantial sentence in this case, both to reflect the gravity of the crime and to deter similar conduct in the future. The United States submits that a sentence of 240 months is appropriate and will aid in deterring similar conduct in the future.

**D. The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have been Found Guilty of Similar Conduct**

Section 3553(a)(6) directs courts to consider avoiding *unwarranted* disparities among defendants "with similar records who have been found guilty of similar conduct." It "does not require the district court to avoid sentencing disparities between defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010). According to the Judiciary Sentencing Information ("JSIN):

> During the last five fiscal years (FY2020-2024), there were 74 defendants whose primary guideline was §2G1.3, with a Final Offense Level of 43 and a Criminal

> History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 74 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 303 month(s) and the median length of imprisonment imposed was 300 month(s).

Here, the United requests a sentence of 240 months, a downward variance from Styner's Sentencing Guidelines range. Although this would be below the national average and median sentences for individuals with the same Sentencing Guidelines, such a sentencing disparity is warranted here. Styner's young age and neurodevelopmental challenges are atypical for defendants convicted of similar crimes and are factors justify a sentencing difference in this case as compared to other sentences imposed nationally. The 240-month sentence requested here would not create an unwarranted sentencing disparity.

### F. The United States is Not Seeking Restitution at This Time

In child pornography cases, restitution is mandatory to any person "harmed as a result of" a defendant's crime. *See* 18 U.S.C. § 2259(a), (c); *see also United States v. Monzel*, 930 F.3d 470, 476 (D.C. Cir. 2019); *United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015) ("Pursuant to 18 U.S.C. § 2259, the victims of certain federal crimes, including possession of child pornography, are entitled to mandatory restitution."). Restitution includes "the full amount of the victim's losses," which may include any costs incurred by the victim for:

(A) Medical services relating to physical, psychiatric, or psychological care;
(B) Physical and occupational therapy or rehabilitation;
(C) Necessary transportation, temporary housing, and child care expenses;
(D) Lost income;
(E) Attorneys' fees, as well as other costs incurred; and
(F) Any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(a), (b)(3); *see also United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015).

At this time the United States is not submitting any restitution requests on behalf of any known victim because no victims have made such a request. If the United States later identifies

any victims who are seeking restitution the government may submit a restitution request in the future.  *See* 18 U.S.C. § 3664(d)(5).

### III.     Conclusion

The Government submits that a sentence of 240 months incarceration, followed by a lifetime of supervised release, is a reasonable sentence in this case and is "sufficient, but not greater than necessary to comply with the purposes" of sentencing.  18 U.S.C. § 3553(a).


Dated:  June 11, 2025                              Respectfully submitted,

                                                   JEANINE FERRIS PIRRO
                                                   UNITED STATES ATTORNEY

                                                    /s/  *Jocelyn Bond*
                                                   Jocelyn Bond,
                                                   DC Bar No. 1008904
                                                   Assistant United States Attorney
                                                   601 D Street, NW
                                                   Washington, D.C. 20530