**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **Criminal No. 24-cr-171-BAH** |
| **v.** | * | |
| | * | |
| **JAMES STYNER** | * | **Sentencing: September 12, 2025** |
| | * | |

**RESPONSE TO GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMO AND DEFENDANT'S SECOND SUPPLEMENT TO DEFENDANT'S POSITION WITH RESPECT TO SENTENCING**

In reaction to allegations made in a VIS letter, the government investigated and filed a supplemental sentencing memo on August 25, 2025. James Styner briefly responds to the government's memo and provides a second defense supplemental sentencing memo.

1. The allegation about James' parents being outside the home of a minor victim set forth in the VIS letter is false. The government's investigation shows that. The under oath declaration of Randy Styner, James' father, shows that. Even the VIS letter, which seemingly pulls information that the author pulled from publicly available information on the website (including, if accurate, the personal information in the very first clause of the very first sentence of the letter) shows that. James' parents took no such action. There was no intimidation; no obstruction.

2. The allegation that James called the daughter of the VIS letter repeatedly until April 2025 is false. James and the author's daughter talked often from November 2023 through February **2024**. At that time, James was only charged by criminal complaint, and the complaint and supporting affidavit concerned

only the DC-based Minor Victim 1 and made no reference to the daughter of the VIS letter. The government listened to the recorded phone calls in February 2024 and recommended (did not demand/required) to James' prior counsel that James end conversations with the girl. James immediately ended all conversations and had no more calls with her. There was no obstruction.

3. The allegation that James' parents deleted sexually explicit images off James' phone is false. The claim in the VIS letter is spurious. The sworn declaration rebuts it fully. The VIS letter is full of made-up allegations for whatever reason.

4. The false allegations in the VIS letter do not mean that the feelings behind that letter, as well as the feelings and expressions in the other VIS letters, did not have great impact on James. After reading them at the jail over the weekend after the last court hearing, James then wrote a supplemental letter to the Court that addresses the VIS statements as a whole. That handwritten letter is attached as an Exhibit to this supplement.

5. James's offenses are the type that carry great stigma, including within jail and prison populations. Inmates who are charged with sex offenses concerning minors – even more so if convicted of sex offenses concerning minors, and even if they were near minors themselves chronologically and mentally – are seen as outside the norms of the acceptable criminal behavior by others behind bars. James has known of his pariah status during his entire incarceration. On or about August 7, 2025, James was physically attacked and strangled by another inmate on his unit, someone who had been taunting James because of

his charges, precisely because of those charges. The other inmate was transferred to a different unit. That said, James was reminded that he will be a target throughout his incarceration based upon his convictions. *See* PSR at paragraph 112 for prior example of being bullied at the D.C. Jail.

6. In the defense sentencing memo, the defense asked the Court for the following sentencing recommendation to minimize the risk of violence against James:

> The Court is mindful this young defendant, based mostly on the fact he has a pending case (sex with a minor) at age 18, likely will be classified Medium Security. The Court is desirous of keeping this young defendant safe. Therefore, the Court recommends, the Bureau of Prisons, depending on their classification assessment, apply a Lesser Security management variable to allow for the defendant's designation to a low-security institution. The Court specially recommends FCI Terminal Island to facilitate family visitation.

Since the last court hearing, defense counsel has consulted with an expert in BOP prison safety and BOP classifications, who *inter alia* reviewed the PSR and Dr. Boyd's mental health report. After speaking with the expert, counsel reaffirms that if placed in a medium security facility in BOP, James would be in a dangerous and unsafe environment, likely to be tormented and victimized. The available BOP statistics regarding comparisons of "medium" to "low" compound assault rates portray stark differences.[1] If BOP places James in a medium security facility, that would be the

[1]https://www.bop.gov/resources/research_projects/assaults/archive/2025-July-code224-inmates.pdf;
https://www.bop.gov/resources/research_projects/assaults/archive/2025-July-code101-inmates.pdf;
https://www.bop.gov/about/statistics/statistics_prison_safety.jsp?month=July&year=2025

equivalent of throwing him to the wolves and, besides the physical harm, counsel predicts could provoke a response like James' suicide attempt as a teenager.[2]

Respectfully submitted,

Date: September 5, 2025

/s/ Edward J. Ungvarsky
Edward J. Ungvarsky
# 459034
Ungvarsky Law, PLLC
421 King Street, Suite 505
Alexandria, VA 22314
DC: 202-546-1500
VA: 571-207-9710
Cell: 202-409-2084
Fax: 571-777-9933
ed@ungvarskylaw.com
Local Counsel for Defendant[3]

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that, this 5th day of September, 2025, I caused a copy of the foregoing motion to be served on counsel of record via the District Court's Electronic Case Filing system.

/s/ Edward J. Ungvarsky
Edward J. Ungvarsky

[2] The PSR's recommendation of FMC Devens' Sex Offender Treatment Program (SOTP is also much preferable to a medium security facility. After a period, James could transfer to low security (perhaps continuing SOTP-NR) with good opportunities for vocational programs and work toward eventual releasing planning.

[3] The defense advises the Court and the government that Mr. Talley has an emergent medical procedure in California on September 11, 2025. Mr. Talley will not appear at the sentencing hearing on September 12th. Mr. Ungvarsky will present Mr. Styner's sentencing position to, and answer any questions by, the Court. Mr. Styner is aware of this situation, consents, and is agreement to proceed forward with sentencing on the 18th.